**WILMINGTON**
RODNEY SQUARE

**NEW YORK**
ROCKEFELLER CENTER

**Robert M. Vrana**
P 302.571.6726
rvrana@ycst.com

May 31, 2024

**VIA ECF**
Judge Stephanos Bibas, United States District Court, District of Delaware

Re: *Copeland v. Netflix, Inc. et al.*, No. 1:24-cv-00163-SB (D. Del. filed Feb. 7, 2024)

Dear Judge Bibas,

We write on behalf of defendants Netflix, Inc. ("Netflix"), Lifetime Entertainment Services, LLC ("LES"), [1] and A&E Television Networks, LLC ("A&E") (collectively, the "Defendants") to request a pre-motion conference, pursuant to Your Honor's Standing Order Regarding a Civil Pre-Motion Conference, in advance of Defendants' forthcoming Rule 12(b)(6) motion to dismiss the First Amended Complaint. Plaintiff's suit arises from the Peabody Award-winning documentary series *Surviving R. Kelly*, which detailed numerous allegations of sexual abuse against R&B artist Robert Kelly, resulting in his criminal conviction. On February 2, 2024, Plaintiff filed this action in the Superior Court of the State of Delaware and Defendants removed to this Court. Plaintiff alleges that an episode from the third season of *Surviving R. Kelly* (the "Episode") defames her through its description and discussion of Kelly's legal proceedings, which included sworn testimony about her 15-year tenure as Kelly's personal assistant. It is undisputed that her duties included interacting with and arranging travel for Kelly's victims.

**Plaintiff's Complaint Fails to State a Cause of Action in Numerous Ways**

Plaintiff's complaint should be dismissed because: (a) Plaintiff fails to allege specific statements that are actually included in the Episode; (b) the challenged statements are protected under the fair report privilege; (c) the challenged statements are substantially true; (d) statements about Plaintiff's knowledge of Kelly's criminal conduct are non-actionable opinions based on disclosed facts; and (e) Plaintiff, a limited-purpose public figure at a minimum, fails to plausibly allege actual malice. Plaintiff's additional tagalong claims must be dismissed as well.[2]

***First***, Plaintiff alleges a set of six allegedly defamatory statements made in the Episode. *See* D.I. 4 ¶ 22. But the Episode does not actually include any of these specific statements, and Plaintiff's claims accordingly must be dismissed. *See, e.g.*, *Valentin v. Wysock*, 2023 WL

[1] LES is an erroneous defendant as it does not own or control the Lifetime television network.

[2] Because Plaintiff originally alleged that she is a citizen of Texas, this Court should apply Texas law in evaluating her claims. *See, e.g.*, *Aoki v. Benihana, Inc.*, 839 F. Supp. 2d 759, 765-766 (D. Del. 2012). This is not an exhaustive list of potential defenses and claims.

2018787, at *3 (D. Del. Feb. 15, 2023) (Bibas, J.) (dismissing defamation claims).

***Second***, the Episode's discussion of Plaintiff is privileged as a fair report of judicial proceedings. Media reports are privileged from liability when they are based on government records and official court proceedings. *See* Tex. Civil Practice and Remedies Code § 73.002(b)(1); *KBMT Operating Co., LLC v. Toledo*, 492 S.W.3d 710, 714-15 (Tex. 2016); *Read v. News-J. Co.*, 474 A.2d 119, 120-21 (Del. 1984). Here, Plaintiff's own federal trial testimony supports the Episode's discussion about her, as does multiple other witnesses' testimony. Plaintiff testified that she was Kelly's personal assistant for approximately 15 years, that she "was told when [she] was first hired that [she] *was an extension* of [Kelly] because he was really busy," and that she was responsible for facilitating the travel and hotel stays for a series of women Kelly interacted with and that she knew many of these women personally. Strikingly, Ms. Copeland testified that Kelly was "disappointed" with her when Plaintiff let "Anna," one of Kelly's victims, "escape," and court testimony also substantiates that Plaintiff received STI results of Kelly's female guests.[3] Because the Episode's brief discussion of Ms. Copeland is based on and supported by Plaintiff's own testimony from Kelly's criminal trials, the fair report privilege bars any defamation claim based on the allegedly defamatory statements.

***Third***, the Episode's reporting about Plaintiff is substantially true. The First Amendment places the burden on Plaintiff to show each complained-of statement is materially false in the context of the whole publication. *See Turner v. KTRK Television, Inc*., 38 S.W.3d 103, 115 (Tex. 2000) (defendant will prevail where the work "correctly conveys a story's 'gist' or 'sting'" even if it "err[s] in the details"). And here, because *Surviving R. Kelly* is a series addressing a matter of serious public concern—Kelly's sexual abuse and trafficking—Plaintiff bears the burden of proving the alleged content is false. *See Klentzman v. Brady*, 456 S.W. 3d 239, 258 (Tex. Ct. App. 2014); *Cousins v. Goodier*, 283 A.3d 1140, 1148 (Del. 2022). Kelly has been sentenced to decades in prison following his convictions on federal racketeering and sex trafficking charges as well as for child sexual abuse. Plaintiff was his personal assistant for approximately 15 years, during which time she acted as "an extension" of Kelly, including after his 2008 trial for possession of child pornography. The series' limited discussion of Plaintiff is based on and confirmed by trial testimony, and has been carefully reported. The challenged statements, to the extent they are even in the Episode and are otherwise actionable, are substantially true.

***Fourth***, to the extent the Episode addresses Plaintiff's knowledge or willful ignorance of Kelly's criminal conduct, it does so with an expression of opinion based on disclosed facts. It is well-settled that "assertions or opinions that do not imply the existence of undisclosed facts and do not misconstrue the facts are not actionable as defamation." *Tomlinson v. McComas*, 2011 WL 5607604, at *4 (Tex. Ct. App. Nov. 17, 2011); *Avenatti v. Fox News Network, LLC*, 2021 WL 3603035, at *3 (D. Del. Aug. 13, 2021) (Bibas, C.J.). Plaintiff testified in court that Kelly was "disappointed" with her when she let "Anna" "escape;" in the Episode, a commenter observes that Plaintiff used the word "escape" in her testimony and opines its use "kind of proves this idea that [Kelly] kept these women against their will, which to me just proved further that [Plaintiff] was totally in the know what has happening and just completely turned a blind eye."

---

[3] *See United States v. Kelly*, No. 1:19-cr-00286-AMD (E.D.N.Y.), Dkt. 246 at 183 (Plaintiff's testimony about the "escape" comment); *United States v. Kelly*, 609 F. Supp. 3d 85, 117 (E.D.N.Y. 2022) ("Anna was tested for sexually transmitted diseases but did not see the results because the doctor sent them directly to Copeland.").

This is an opinion based on a disclosed fact; in other words, based on the fact that Plaintiff used the word "escape" in her testimony, "viewers could easily decide for themselves the validity" of the Episode's characterizations of her relationship with Kelly and knowledge of his criminal conduct. *Brewer v. Cap. Cities/ABC, Inc.*, 986 S.W.2d 636, 643 (Tex. Ct. App. 1998).

***Fifth***, Plaintiff, who at minimum is a limited-purpose public figure for purposes of this suit,[4] must establish "with clear and convincing evidence" that any allegedly false implications about her were published with "actual malice" – meaning that the Defendants actually knew that the implication was false at the time of publication or recklessly disregarded the probability of falsity. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 285-86 (1964). The law imposes a high burden concerning actual malice: "reckless disregard" is not measured "by whether a reasonably prudent man would have published, or would have investigated before publishing." *St. Amant v. Thompson*, 390 U.S. 727, 730-31 (1968). "Mere negligence does not suffice" for actual malice, *Masson v. New Yorker Mag.*, 501 U.S. 496, 510 (1991); instead, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant*, 390 U.S. at 731. Courts regularly dismiss defamation claims for failure to plausibly plead actual malice. *See, e.g.*, *Walker v. Beaumont Ind. School Dist.*, 938 F.3d 724, 749 (5th Cir. 2019) (affirming dismissal); *Immanuel v. CNN*, 618 F. Supp. 3d 557, 566-67 (S.D. Tex. 2022); *Avenatti*, 2021 WL 3603035, at *4.

Aside from parroting actual malice-related buzz words (*see, e.g.*, D.I. 4 ¶ 37 (baldly alleging Defendants "falsely portrayed Ms. Copeland with reckless disregard for its offensiveness")), Plaintiff fails to allege *any* facts that could even demonstrate actual malice. The facts available to this Court at the pleadings stage also prevent any finding of actual malice; Plaintiff declined to respond to repeated efforts to include her perspective in the series (D.I. ¶¶ 16, 20), and the Episode includes a card stating that that "Diana Copeland stated she was unaware of any of Kelly's relationships with minors, and testified she was not aware of or involved in any abusive behavior by Kelly," conveying Plaintiff's position on the allegations to viewers. These actions do not reflect a "reckless disregard" for the falsity of the statements at issue. On the contrary, the production was based on extensive research, interviews, and court testimony. As a result of the Defendants' thorough reporting and the FAC's failure to even reference the actual malice standard, Plaintiff's defamation claim should be dismissed.[5]

---

[4] A public figure alleging defamation must show that the defendant acted with actual malice, and courts have delineated two kinds of "public figure" defamation plaintiffs. A "general purpose public figure" is someone who has "assumed [a] role[] of especial prominence in the affairs of society" (*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974)), and a limited purpose public figure is someone who "has more than a trivial or tangential role in the controversy" when "the alleged defamation" is "germane to the plaintiff's participation in the controversy." *New Times, Inc. v. Wamstad*, 106 S.W. 3d 916, 921 (Tex. Ct. App. 2003). Here, there can be no question that Kelly's criminal conduct is a matter of "public controversy," and Plaintiff injected herself voluntarily into this public controversy by giving an interview on national television about this very controversy and by acting as "an extension of" Kelly for 15 years.

[5] Plaintiff's tagalong claims for false light/invasion of privacy, appropriation, and intentional and negligent infliction of emotional distress must each be independently dismissed under Delaware and Texas law – including because the various claims are duplicative of Plaintiff's defamation claim, because they are not recognized under applicable law, because of the existence of a constitutional defense, or because Plaintiff has failed to plausibly allege at least one required element – all of which Defendants will address in greater detail in their forthcoming motion.

        Respectfully,

        */s/ Robert M. Vrana* (No. 5666)

        Robert M. Vrana (No. 5666)

cc: All counsel of record (by CM/ECF)